UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYLES DEANTE CLAY HARRIS,

                 Plaintiff,

      v.

C.O. STANLEY VIAU; JOHN DOE #2;
WESTCHESTER MEDICAL CENTER; and
WESTCHESTER COUNTY,

                 Defendants.

No. 17-CV-9746 (KMK)

OPINION & ORDER

Appearances:

Myles Deante Clay Harris
Pine City, NY
*Pro se Plaintiff*

William H. Bave, Jr., Esq.
Wilson, Bave, Conboy, Cozza & Couzens, P.C.
White Plains, NY
*Counsel for Defendant Westchester Medical Center*

KENNETH M. KARAS, District Judge:

      Plaintiff Myles Deante Clay Harris ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against C.O. Stanley Viau ("Viau"), John Doe #2,[1] Westchester County Health

---

[1] In the Court's Order of Service directing service on Defendants, issued on April 23, 2018, the Court directed counsel for Westchester Medical Center ("WMC") to "ascertain the identity of John Doe #2 and the address where the defendant may be served." (Order of Service 3 (Dkt. No. 10).) To date, WMC has not identified John Doe #2. The Court therefore directs WMC to do so within the next 20 days.

Care Corporation ("Defendant" or "WCHCC"),[2] and Westchester County[3] (collectively, "Defendants"), alleging that Defendants violated his Eighth Amendment rights when they provided him with inadequate medical care after he broke his arm in an altercation with another inmate, resulting in permanent pain and disfigurement. (*See generally* Am. Compl. (Dkt. No. 8).) Before the Court is Defendant WCHCC's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Not. of Mot. To Dismiss

---

[2] Plaintiff named Westchester Medical Center as a defendant in this Action. However, Defendant filed its Motion as "Westchester County Health[][C]are Corporation s/h/a Westchester Medical Center," (Def.'s Mem. 1), and notes that "Westchester County Health Care Corporation (WCHCC) is a public benefit corporation created by [the] New York State legislature in 1997," (*id.* at 2). *See* N.Y. Pub. Auth. Law §§ 3301, 3303; *see also Fortunato v. Liebowitz*, No. 10-CV-2681, 2012 WL 6628028, at *2 (S.D.N.Y. Dec. 20, 2012) ("WCHCC is a New York State Public Benefit Corporation that operates the Westchester Medical Center. . . ."). As a public benefit corporation, WCHCC is "not a [municipal] agency, but rather is a separate, suable entity." *Quinones v. City of New York*, No. 16-CV-985, 2017 WL 1322205, at *11 n.14 (S.D.N.Y. Jan. 6, 2017) (citation omitted), *adopted by* 2017 WL 775851 (S.D.N.Y. Feb. 28, 2017). *See* N.Y. Pub. Auth. Law § 3305(1) (noting that WCHCC shall have the power "to sue and be sued"); *see also CIT Bank v. Dambra*, No. 14-CV-3951, 2015 WL 7422348, at *3 n.2 (E.D.N.Y. Sept. 25, 2015), (distinguishing the Parking Bureau and Environmental Control Board "which, to the extent they are City agencies . . . , are not suable entities," from the Transit Bureau, which is "not a City agency but an arm of the Metropolitan Transit Authority, a public-benefit corporation" (citation, alteration, and quotation marks omitted)), *adopted by* 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015); *Smith v. Metro N. Commuter R.R.*, No. 98-CV-2528, 2000 WL 1449865, at *9 (S.D.N.Y. Sept. 29, 2000) (noting that as a public benefit corporation, "Metro–North constitutes a municipal entity that is considered a suable 'person' under § 1983"); *Schrang v. N.Y.C. Health & Hosps. Corp.*, No. 95-CV-3471, 1996 WL 449340, at *2–3 (E.D.N.Y. Aug. 1, 1996) (finding the New York Health and Hospitals Corporation, "a public benefit corporation created by statute," to be "a separate and distinct entity from the City" with "the powers to sue and be sued" (citation, alteration, and quotation marks omitted)). The Clerk of the Court is therefore directed to replace "Westchester Medical Center" as a defendant in this Action with "Westchester County Health Care Corporation." *See Cortlandt v. Westchester County*, No. 07-CV-1783, 2007 WL 3238674, at *1 (S.D.N.Y. Oct. 31, 2007) (naming Westchester County Health Care Corporation as a defendant "in place of Westchester Medical Center").

[3] Plaintiff originally named Westchester County Department of Corrections ("WCDOC") as a defendant in this Action. Because WCDOC is a non-suable entity, Westchester County was substituted as a defendant. (*See* Order of Service 2 (Dkt. No. 10).)

2

("Def.'s Mot.") (Dkt. No. 20); Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 22).)[4] For the reasons to follow, Defendant's Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl.), and are taken as true for the purpose of resolving the instant Motion.

On January 6, 2016, Plaintiff "sustained a broken left arm due to an inmate assaulting [him] while at recreation" at Westchester County Department of Corrections ("WCDOC"). (Am. Compl. 4.) Plaintiff was examined by WCDOC medical staff, and was then taken to booking "and escorted to Westchester Medical Center by [Viau]." (*Id.*) At Westchester Medical Center ("WMC"), x-rays were taken of Plaintiff's arm and he was then moved to a private room. (*Id.*) After approximately 15 minutes, John Doe #2, a registered nurse, entered the room and notified Plaintiff that he suffered a "left humerous [sic] distal fracture" and that "surgery would be the only way for [his] bone to heal properly without future complications." (*Id.*) Plaintiff consented to the procedure, and John Doe #2 said that Plaintiff would need to be moved to a designated area for surgery. (*Id.*) However, Viau informed John Doe #2 that Plaintiff needed to be transported back to WCDOC and therefore could not undergo surgery. (*Id.*) Viau said that no WCDOC staff would be able to remain with Plaintiff at the hospital through surgery because Viau "did not want to 'do overtime.'" (*Id.*) Plaintiff objected to this decision and said that his arm was in extreme pain and that he did not want to risk his arm healing improperly. (*Id.*) Viau and John Doe #2 then stepped outside the room and had a conversation; when they returned,

---

[4] Defendants Westchester County and Viau have filed a separate Motion To Dismiss. (*See* Dkt. No. 43.)

John Doe #2 "informed [Plaintiff] that he had to adhere to [Viau]'s demands despite surgery being necessary for the best healing." (*Id.*) John Doe #2 then placed a splint on Plaintiff's injured arm and placed the arm in a sling, and Plaintiff was escorted back to WCDOC. (*Id.*)

Upon his return, Plaintiff was housed in the infirmary for six weeks, during which he "constantly complained to nurses and staff that [he] was experiencing extreme pain and was very concerned about my arm healing improperly." (*Id.*) Plaintiff was given pain medication but it "was insufficient." (*Id.*) Exactly six weeks from the date of Plaintiff's injury, he was taken to WCDOC's clinic and seen by John Doe Doctor, who was employed by Westchester Medical Center. (*Id.* at 4–5.) The doctor removed the splint and sling and examined Plaintiff's arm. (*Id.* at 5.) The doctor informed Plaintiff that his arm had healed improperly and "was disfigured due to inadequate medical care." (*Id.*) As a result, Plaintiff is "now deformed and in constant pain." (*Id.*)

### B. Procedural History

Plaintiff filed the original Complaint on December 11, 2017. (*See* Compl. (Dkt. No. 2).) Plaintiff's request to proceed in forma pauperis was granted on January 23, 2018. (*See* Dkt. No. 6.) On February 2, 2018, Plaintiff was directed to amend his complaint as it failed to state a claim as pled. (*See* Dkt. No. 7.) Plaintiff filed an Amended Complaint on March 15, 2018. (*See* Am. Compl.)

On May 16, 2018, WCHCC requested a pre-motion conference in anticipation of filing a motion to dismiss. (*See* Dkt. No. 13.) The Court set a briefing schedule for WCHCC's motion. (*See* Dkt. No. 18.) WCHCC filed its Motion To Dismiss on June 22, 2018. (*See* Def.'s Mot.; Def.'s Mem.; Def.'s Decl. in Supp. of Mot. To Dismiss ("Def.'s Decl.") (Dkt. No. 21).) Plaintiff never filed a response. On October 23, 2018, WCHCC filed a letter asking that it not be required

to file an answer to the Amended Complaint until its unopposed Motion To Dismiss is decided, (*see* Dkt. No. 35), which the Court granted the next day, (*see* Dkt. No. 37).

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

5

678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation, italics and quotation marks omitted)).

B. Analysis

Plaintiff alleges that all Defendants acted with "deliberate indifference to [P]laintiff's rights, . . . constitut[ing] cruel and unusual punishment under the Eighth Amendment of the United States Constitution." (Am. Compl. 5.) "The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

However, a conditions of confinement claim brought by a pretrial detainee is analyzed under the Fourteenth Amendment. Until recently, "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody [were] analyzed under the same standard irrespective of whether they [we]re brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72. The Second Circuit's decision in *Darnell* overruled *Caiozzo* "to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Darnell*, 849 F.3d at 35.

"Like under the Eighth Amendment, deliberate indifference pursuant to the Fourteenth Amendment has both an objective and a subjective prong." *Figueroa v. County of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018). The objective prong is the same under either analysis: It requires that the deprivation at issue be, "in objective terms, sufficiently serious." *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also*

7

*Spavone*, 719 F.3d at 138 ("The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." (citation and quotation marks omitted)). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).

The subjective prong differs depending on whether an inmate is a convicted prisoner or a pretrial detainee. If a convicted prisoner, an inmate must allege that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that the official must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness" that "requires that the charged official act or

fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (citation and quotation marks omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

In the case of pretrial detainees, "the 'subjective prong' (or 'mens rea prong') . . . is defined objectively." *Darnell*, 849 F.3d at 35 (italics omitted). After *Darnell*, pretrial detainees asserting conditions of confinement claims under the Fourteenth Amendment must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*; *see also Figueroa*, 2018 WL 3315735, at *4 (same).

Here, Plaintiff's Amended Complaint indicates that he is currently a convicted and sentenced prisoner incarcerated at Southport Correctional Facility. (*See* Am. Compl. 2.) However, the events underlying Plaintiff's Complaint occurred when he was housed at WCDOC, and it is not clear from Plaintiff's Complaint whether he was convicted and sentenced at the time of the alleged constitutional violations. However, the Court need not determine Plaintiff's status at the time of the alleged conduct at this stage because, for the reasons that follow, Plaintiff's claims against WCHCC fail for other reasons.

Plaintiff's Amended Complaint fails to state a claim because he has not alleged any official policy or custom on the part of WCHCC that resulted in Plaintiff's inadequate medical treatment as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). WCHCC, which "owns and maintains Westchester Medical Center," is "a public benefit corporation created by [the] New York State Legislature." (Def.'s Mem. 2.) WCHCC and its employees are state actors for purposes of § 1983 liability. *See Mejia v. New York City Health & Hosps. Corp.*, No. 16-CV-9706, 2018 WL 3442977, at *5 (S.D.N.Y. July 17, 2018). "As a municipal corporation, [WCHCC] cannot be held liable under [§] 1983 pursuant to a theory of respondeat superior. Rather, liability under [§] 1983 is governed by principles set forth in *Monell*." *Mejia*, 2018 WL 3442977, at *12 (italics omitted); *see also Fortunato*, 2012 WL 6628028, at *8 (analyzing constitutional claims against WCHCC under *Monell*); *Matthews v. Malkus*, 377 F. Supp. 2d 350, 360 (S.D.N.Y. 2005) (dismissing claims against WMC where there was "no basis for assertion of a *Monell* claim"); *Estes–El v. N.Y.S. Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bur.*, No. 95-CV-3454, 1997 WL 342481, at *4 (S.D.N.Y. June 23, 1997) (noting that the liability of a public benefit corporation under § 1983 "is governed by the principles set forth in *Monell* . . . and its progeny"); *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993) (same). "Therefore, to state a claim against [WCHCC], . . . '[P]laintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Mejia*, 2018 WL 3442977, at *12 (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff may satisfy the "policy, custom[,] or practice" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused

10

the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Here, Plaintiff has not alleged that there was an official policy endorsed by WCHCC that led to the violation of Plaintiff's Eighth Amendment rights, or that any of the WCHCC employees involved in the allegations possessed policymaking authority such that their conduct could establish *Monell* liability. *See Mejia*, 2018 WL 3442977, at *13 ("Where the contention is not that the defendants' actions were taken pursuant to a formal policy, but rather that they were taken or caused by an official whose decisions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000))); *Allen v. City of New York*, No. 03-CV-2829, 2007 WL 24796, at *19 (S.D.N.Y. Jan. 3, 2007) (noting that to establish *Monell* liability based on individual conduct, "the challenged action must have been undertaken by an authorized 'final policymaker'" (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988))). Plaintiff also does not allege that WCHCC acted pursuant to a practice so consistent and widespread that it essentially constitutes a custom or usage of which a supervising policymaker must have been aware; rather, Plaintiff's allegations are confined to his own treatment while at WMC. *See Mejia*, 2018 WL 3442977, at *12 (dismissing *Monell* claim against municipal hospital where the plaintiff "alleges no facts regarding any conduct by the hospital in connection with any other patient," addressing only "his own brief stay at the hospital"); *Walker v. City of*

*New York*, 63 F. Supp. 3d 301, 312 (E.D.N.Y. 2014) ("[The] [p]laintiffs have not identified any additional, similar examples of unconstitutional practices beyond the events they complain of here."). Nor does he make any allegation that WCHCC failed to train its employees properly. *See White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *12 (S.D.N.Y. Dec. 21, 2018) (dismissing *Monell* claim on failure to train theory where the plaintiff "does not point to the existence of any formal or informal training program").

Plaintiff alleges, at most, that individual WCHCC employees acted with deliberate indifference to his specific medical needs. In fact, far from alleging that WCHCC had a policy or custom that resulted in denial of Plaintiff's needed surgery, Plaintiff asserts that John Doe #2 arranged for Plaintiff's surgery, but Viau insisted Plaintiff be discharged and returned to WCDOC over John Doe #2's objection. (*See* Am. Compl. 4 ("John Doe #2 informed me that he had to adhere to [Viau]'s demands despite surgery being necessary for the best healing results.").) Because Plaintiff has "chosen to bring suit against" WMC, which is owned and operated by a public benefit corporation, he cannot establish liability absent allegations that a "policy or custom . . . inflict[ed] the injury." *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 652 (S.D.N.Y. 1994) (quoting *Monell*, 436 U.S. at 694); *see also Mejia*, 2018 WL 3442977, at *12 (dismissing deliberate indifference claim against public benefit corporation where the plaintiff "does not allege the existence of any formal [hospital] policy or persistent practices"); *Macaluso v. Nassau Cty. Corr. Ctr.*, No. 13-CV-6206, 2014 WL 1401429, at *4 (E.D.N.Y. Apr. 8, 2014) (dismissing §1983 claim against public benefit corporation where the complaint was "devoid of any facts to support an inference that . . . the inadequate medical care [the plaintiff] received . . . [was] the result of a municipal policy or custom of deliberate indifference"); *McIntyre v. NuHealth–Nassau Univ. Med. Ctr.*, No. 11-CV-3934, 2011 WL 4434227, at *5

(E.D.N.Y. Sept. 19, 2011) (dismissing claims against public benefit corporation where the plaintiff failed to allege "the existence of a formal policy which is officially endorsed by the [hospital]" as required by *Monell*).

Plaintiff's Amended Complaint therefore fails to state a deliberate indifference claim against WCHCC under either the Eighth or Fourteenth Amendment.[5]

III. Conclusion

For the reasons stated above, WCHCC's Motion To Dismiss is granted without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within the amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain all of the claims against all Defendants, including those who

---

[5] WCHCC also argues that any state law medical malpractice claim Plaintiff may have intended to bring is barred by the statute of limitations and for failure to file a notice of claim as required by statute. (Def.'s Mem. 2–4.) Plaintiff's Amended Complaint makes no reference to state law medical malpractice claims. However, the Court notes that any potential state law medical malpractice claims would require Plaintiff to have filed a timely notice of claim. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations. . . ."); *Dilworth v. Goldberg*, No. 10-CV-2224, 2011 WL 4526555, at *2 (S.D.N.Y. Sept. 30, 2011) (same). "In federal court, state notice of claim statutes apply to state law claims." *Dilworth*, 2011 WL 4526555, at *2. "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy*, 164 F.3d at 793. Should Plaintiff choose to include state law medical malpractice claims in an amended complaint, he must plead fulfillment of this requirement as a threshold matter for the Court to consider his claims. *See Cortlandt v. Westchester County*, No. 07-CV-1783, 2007 WL 3238674, at *7 (S.D.N.Y. Oct. 31, 2007) ("New York Public Authorities Law § 3316 . . . requires compliance with General Municipal Law § 50-e to maintain an action against a public benefit corporation such as the Westchester County Health Care Corporation. . . . Absent a showing by the plaintiff that a notice of claim has been served, the complaint may be dismissed." (citations omitted)).

have not joined in this Motion to Dismiss. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his claims against WCHCC may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 20), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED: March 25, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE