UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYLES DEANTE CLAY HARRIS,

                Plaintiff,

         v.

C.O. STANLEY VIAU; JOHN DOE #2;
WESTCHESTER MEDICAL CENTER; and
WESTCHESTER COUNTY,

                Defendants.

No. 17-CV-9746 (KMK)

OPINION & ORDER

Appearances:

Myles Deante Clay Harris
Pine City, NY
*Pro se Plaintiff*

Loren Zeitler, Esq.
Westchester County Attorney
White Plains, NY
*Counsel for Defendant Westchester County and Stanley Viau*

KENNETH M. KARAS, District Judge:

      Myles Deante Clay Harris ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against C.O. Stanley Viau ("Viau") and Westchester County ("Westchester")[1] (together, the "Westchester Defendants"), Westchester County Health Care Corporation ("WCHCC"), and John Doe #2 (collectively, "Defendants"), alleging that Defendants violated his Eighth Amendment rights when they provided him with inadequate medical care after he broke his arm in an altercation with another inmate, resulting in permanent pain and disfigurement. (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 29).) Before the Court is the Westchester

---

[1] Plaintiff originally named Westchester County Department of Corrections ("WCDOC") as a defendant in this Action. Because WCDOC is a non-suable entity, Westchester County was substituted as a defendant. (*See* Order of Service 2 (Dkt. No. 10).)

Defendants' Motion To Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Not. of Mot. (Dkt. No. 43); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 44).) For the reasons to follow, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

On January 6, 2015, Plaintiff "sustained a broken left arm due to an inmate assaulting [him] while at recreation" at Westchester County Department of Corrections ("WCDOC"). (SAC 4.) Plaintiff was examined by WCDOC medical staff, and was then taken to booking "and escorted to Westchester Medical Center by Stanley Viau." (*Id.*) At Westchester Medical Center ("WMC"), x-rays were taken of Plaintiff's arm and he was then moved to a private room. (*Id.*) After approximately 15 minutes, John Doe #2, a registered nurse, entered the room and notified Plaintiff that he suffered a "left humerous [sic] distal fracture" and that "surgery would be the only way for [his] bone to heal properly without future complications." (*Id.*) Plaintiff consented to the procedure, and John Doe #2 said that Plaintiff would need to be moved to a designated area for surgery. (*Id.*) However, Viau informed John Doe #2 that Plaintiff needed to be transported back to WCDOC and therefore could not undergo surgery. (*Id.*) Viau said that no WCDOC staff would be able to remain with Plaintiff at the hospital through surgery because Viau "did not want to 'do overtime.'" (*Id.*) Plaintiff objected to this decision and said that his arm was in extreme pain and that he did not want to risk his arm healing improperly. (*Id.*) Viau and John Doe #2 then stepped outside the room and had a conversation; when they returned,

John Doe #2 "informed [Plaintiff] that he had to adhere to [Viau]'s demands despite surgery being necessary for the best healing." (*Id.*) John Doe #2 then placed a splint on Plaintiff's injured arm and placed the arm in a sling, and Plaintiff was escorted back to WCDOC. (*Id.*)

Upon his return, Plaintiff was housed in the infirmary for six weeks, during which he "constantly complained to nurses and staff that [he] was experiencing extreme pain and was very concerned about [his] arm healing improperly." (*Id.*) Plaintiff was given pain medication but it "was insufficient." (*Id.*) Exactly six weeks from the date of Plaintiff's injury, he was taken to WCDOC's clinic and seen by John Doe Doctor, who was employed by Westchester Medical Center. (*Id.* at 4–5.) The doctor removed the splint and sling and examined Plaintiff's arm. (*Id.* at 5.) The doctor informed Plaintiff that his arm had healed improperly and "was disfigured due to inadequate medical care." (*Id.*) As a result, Plaintiff is "now deformed and in constant pain." (*Id.*)

### B. Procedural History

Plaintiff filed the original Complaint on December 11, 2017, naming WMC as the sole Defendant and alleging conduct involving an unnamed "nurse at Westchester Medical Center," who allegedly rendered insufficient medical care after Plaintiff broke his arm. (*See* Compl. 1, 5 (Dkt. No. 2).) Plaintiff's request to proceed in forma pauperis was granted on January 23, 2018. (*See* Dkt. No. 6.) On February 2, 2018, Plaintiff was directed to amend his complaint as it failed to state a claim as pled. (*See* Dkt. No. 7.) Plaintiff filed a First Amended Complaint on March 15, 2018, which named WMC, Westchester, and two John Does as Defendants. (First Am. Compl. ("FAC") (Dkt. No. 8).) John Doe #1 was identified as a "correctional officer at WCDOC" who worked the 3 P.M. shift on January 6, 2015, and John Doe #2 was described as the "Registered Nurse at Westchester Medical Center" working that same shift at WMC. (FAC

3.) On June 22, 2018, the Westchester County Attorney identified Viau as the "John Doe #1" named in the Complaint. (Dkt. No. 19.) On August 2, 2018, Plaintiff filed the operative Second Amended Complaint naming Viau as a Defendant in place of John Doe #1. (*See* SAC.)

On January 11, 2019, Defendants Westchester and Viau filed the instant Motion To Dismiss. (Not. of Mot.; Defs.' Mem.) Plaintiff filed a response on March 7, 2019. (Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 49).) Defendants filed a reply on March 25, 2019. (Defs.' Reply in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 56).)[2]

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

---

[2] WMC separately moved to dismiss Plaintiff's claims against it on June 22, 2018, (Dkt. No. 20), and on March 25, 2019, the Court issued an Opinion & Order (the "Opinion") substituting WCHCC for WMC as the proper Defendant and dismissing Plaintiff's claims against WCHCC without prejudice for failure to plead municipal liability under *Monell*, (*see* Op. & Order (Dkt. No. 55)).

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation, italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B. Analysis

Defendants argue that Plaintiff's § 1983 claims are time-barred, (Defs.' Mem. 4–7); that Plaintiff failed to exhaust his administrative remedies, (*id.* at 7–9); that Plaintiff's claims against Westchester and against Viau in his official capacity fail because Plaintiff has failed to establish municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), (*id.* at 9–11); that Plaintiff fails to state a claim against Viau in his individual capacity, (*id.* at 11–13); and that Viau is entitled to qualified immunity, (*id.* at 13–14). Defendants also argue that any state law claims should be dismissed for failure to serve a notice of claim. (*Id.* at 14–15.)

1. Plaintiff's § 1983 Claims are Time-Barred

The events underlying Plaintiff's claims occurred on January 6, 2015. Plaintiff originally brought suit on December 11, 2017; however, the original Complaint only asserted claims against WCHCC, (*see* Compl.), and Westchester and Viau (originally named as "John Doe #1") were not added as Defendants until Plaintiff filed his First Amended Complaint on March 15, 2018, (*see* FAC), which Defendants argue falls outside the three-year statute of limitations, (Defs.' Mem. 4–7). Plaintiff argues that his claims "relate back" to the original Complaint, which was filed within the statute of limitations, and that his claims are therefore not time-barred. (Pl.'s Mem. 3–5.)

a. Applicable Law

For § 1983 actions, "the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation, alterations, and quotation marks omitted). Here, New York's three-year statute of limitations for personal injury actions applies. *Id.* (citing, inter alia, N.Y. C.P.L.R.

§ 214(5)); *see also Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011) (same). The question of when a § 1983 claim accrues is a "question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[A]ccrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at 80 (citation and quotation marks omitted). Put differently, accrual occurs when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and quotation marks omitted).

Where, as here, a plaintiff filed his original complaint within the statute of limitations but named new or different defendants in an amended complaint after the limitations period had run, the claims are time-barred unless they "relate back" under Federal Rule of Civil Procedure 15(c).

> [U]nder Rule 15(c)(1)(C), an amended complaint relates back to the original complaint if: (1) it "changes the party or the naming of the party against whom a claim is asserted"; (2) the claim or defense asserted by the amendment arises out of the same transaction as the original complaint; (3) the party added by the amendment "received such notice of the action that it will not be prejudiced in defending on the merits"; and (4) the added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Furthermore, the third and fourth elements must be satisfied within the 120-day period of Rule 4(m) for serving a summons and complaint.

*Vasconcellos v. City of New York*, No. 12-CV-8445, 2014 WL 4961441, at *5 (S.D.N.Y. Oct. 2, 2014) (quoting Fed. R. Civ. P. 15(c)(1)(C)).

b. Application

"A claim of deliberate indifference of medical needs brought under [§] 1983 accrues when medical treatment is denied." *Miles v. City of New York*, No. 14-CV-9302, 2018 WL 3708657, at *10 (S.D.N.Y. Aug. 3, 2018) (citation, alteration, and quotation marks omitted). Plaintiff's § 1983 claims, which all relate to the alleged denial of medical treatment on January 6, 2015, therefore accrued on that date. *See id.* (holding the plaintiff's deliberate indifference claim

8

accrued on "the date [the defendant] allegedly denied [the] [p]laintiff treatment for his injuries"); *see also Cotto v. City of New York*, No. 15-CV-9123, 2017 WL 3476045, at *3 (S.D.N.Y. Aug. 11, 2017) (holding the plaintiffs' claims accrued on the date that the plaintiffs "allege their various federal constitutional violations . . . occurred"), *appeal dismissed* No. 17-2862, 2017 WL 6397761 (2d Cir. Dec. 11, 2017); *Traore v. Police Office Andrew Ali Shield*, No. 14-CV-8463, 2016 WL 316856, at *5 (S.D.N.Y. Jan. 26, 2016) (holding the plaintiff's claims accrued on the two dates he was denied medical treatment because he "was immediately aware of his injuries when they occurred . . . and was aware that he did not receive treatment when he first requested it"). Plaintiff therefore needed to bring his § 1983 claims before January 6, 2018 in order for them to be timely.

Although Plaintiff originally brought suit on December 11, 2017, Westchester and Viau (originally named as a John Doe Defendant) were not added as Defendants until Plaintiff filed his First Amended Complaint on March 15, 2018, (*see* FAC), and Viau was only properly named in the Second Amended Complaint filed on August 2, 2018, (*see* SAC), both outside the three-year statute of limitations period. Plaintiff argues that although his original Complaint "mistakenly names Westchester Medical Center (the place where the Plaintiff's constitutional rights were violated by . . . [D]efendants)[,] Plaintiff indicates on the face of that complaint that the claims asserted are related to the same facts involving Westchester County Department of Corrections officials in which Plaintiff expounds on in his amended complaint," and that the amendment therefore relates back. (Pl.'s Mem. 4.) Plaintiff also argues that the original complaint names "a government agency and government official acting under the direction of WCDOC," and that Westchester was therefore on notice of the claim. (*Id.*) Defendants argue that the First Amended Complaint alleges an entirely different set of facts than the original

Complaint, including that a correction officer (later identified as Viau) refused to allow Plaintiff's surgery because he did not want to work overtime, and that the amendment therefore does not relate back. (Defs.' Mem. 5.)

The Court finds that Plaintiff's claims against the Westchester Defendants are time-barred. Although the allegations in Plaintiff's amended complaints arise out of the same general incident as the original Complaint, Plaintiff did not, in the original Complaint, either name any correction officer or WCDOC as a defendant, or otherwise include facts implicating Viau and Westchester. Rule 15(c)(1)(C) is therefore inapplicable, because "the rule applies only where an amendment 'changes the party or the naming of the party against whom a claim is asserted'—not where an amendment adds a previously unmentioned party." *Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017) (collecting cases); *see also Salazar v. City of New York*, No. 15-CV-1989, 2016 WL 879318, *4 (S.D.N.Y. 2016) ("Rule 15(c)(1)(C) governs replacement of defendants, not additions; it does not allow 'relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because plaintiff did not know their identities.'" (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013))); *Pikos v. Liberty Maint., Inc.*, No. 09-CV-4031, 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015) ("Courts in this Circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants."); *Velasquez v. Dig. Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, *3 (E.D.N.Y. May 19, 2014) ("Where a plaintiff has not mistakenly sued the wrong party, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C)—a 'mistake concerning the proper party's identity'—has not been met."); *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) ("In an 'additional party'

case . . . [t]he plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable. If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so."). In his original Complaint, Plaintiff unambiguously brought claims only against "[t]he nurse at Westchester Medical Center," for insufficiently treating Plaintiff's injury and "allow[ing] Plaintiff back to WCDOC without properly administering adequate medical attention." (Compl. 5.) Plaintiff's subsequent amended complaints cannot relate back where he "simply neglected to sue another defendant who might also be liable." *Vitamin C*, 995 F. Supp. 2d at 129. Additionally, Plaintiff not only failed to identify Westchester or any correction officer as defendants in the original Complaint; he also did not include the only factual allegations that implicate Defendants in his claims—that Viau refused to allow Plaintiff's surgery to proceed and instead returned him to WCDOC without treatment—and thus cannot invoke Rule 15. *See Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) ("[E]ven where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." (citation and quotation marks omitted)), *as amended* (Oct. 3, 2006).

Furthermore, even if the factual allegations against the Westchester Defendants had been included in the original Complaint, Plaintiff's amendments still could not relate back because his failure to identify the correct defendants is not a "mistake" within the meaning of Rule 15. "An amendment adding a defendant to a complaint relates back to the original pleading if the new defendant has: '(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Nash v. Kressman*, No. 11-CV-7327, 2013 WL 6197087, at *6 (S.D.N.Y. Nov. 27, 2013) (quoting Fed. R. Civ. P.

11

15(c)(1)(C)). Plaintiff argues that the Westchester Defendants knew or should have known that the action would have been brought against it, (*see* Pl.'s Mem. 4); however, Plaintiff does not address Rule 15's requirement that the action would have been brought against the Westchester Defendants "*but for a mistake concerning the proper party's identity*," Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added); *see also Vasconcellos*, 2014 WL 4961441, at *7 ("[I]t is not enough under Rule 15 that a defendant knew 'that the action would have been brought against it.' Rather, the defendant must have known that the action would have been brought against him but for 'a *mistake* concerning the proper party's identity.'"). Courts have repeatedly held that failure to properly identify a John Doe defendant within the statute of limitations is not a "mistake" under Rule 15. *See Hogan*, 738 F.3d at 518 ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" (citation omitted)); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) (holding amended complaint did not relate back with respect to six defendants identified after the statute of limitations had run because the amendment "did not correct a mistake in the original complaint, but instead supplied information [the plaintiff] lacked at the outset"), *modified by* 74 F.3d 1366 (2d Cir. 1996); *Vasconcellos*, 2014 WL 4961441, at *7 (finding § 1983 claims time-barred where the plaintiff "knew who the proper defendants were" as they "were involved in the incident" underlying the complaint, but "did not . . . know their names," because the plaintiff "was ignorant, not mistaken"); *Nash*, 2013 WL 6197087, at *6 (holding deliberate indifference claims based on events alleged in the original complaint were "only timely . . . as to" the defendant named in the original complaint, and not those added in amended complaints after the limitations period had run); *cf. Ceara v. Deacon*, 916 F.3d 208, 213–14 (2d Cir. 2019) (holding that the plaintiff made a mistake as to the proper party's identity

12

under Rule 15(c)(1)(C), where, inter alia, he misspelled the defendant's name in the case caption and included specific identifying information, making it "implausible that DOCCS and [the defendant] did not know to whom [the plaintiff] was referring").

Plaintiff cites N.Y. C.P.L.R. § 1024, which provides that "[a] party who is ignorant . . . of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known," in support of his argument that his ignorance of the name or identity of a proper party does not bar his claims because he timely "amended his complaint providing sufficient descriptive information of John Doe defendants to adequately satisfy the notice requirements of Rule 15(c)(1)(C)." (Pl.'s Mem. 4.) However, even allowing that Plaintiff included some identifying information for John Doe #1 in the First Amended Complaint (namely, the shift of the correctional officer he sought to sue), and diligently amended to replace Viau as John Doe #1 once he was identified, Plaintiff cannot show that he exercised due diligence prior to the running of the limitations period, as John Doe #1 was not included as a defendant at all until after the limitations period had run. *Vasconcellos*, 2014 WL 4961441, at *9 ("[I]n order to invoke C.P.L.R. § 1024's benefits, [a plaintiff] must first show that []he 'exercised due diligence, prior to the running of the statute of limitations, to identify the defendants by name.'" (alterations omitted) (quoting *Hogan*, 738 F.3d at 519)); *see also JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (holding that the plaintiff "cannot satisfy the first requirement of § 1024" because he "appears to have expended no efforts at all to identify the [defendants] in the three years that followed" the events underlying his claims, "waiting until the statute of limitations had nearly run to file his complaint"), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *cf. Mabry v. N.Y.C. Dep't of Corrs.*, No. 05-CV-8133, 2008 WL

619003, at *6 (S.D.N.Y. Mar. 7, 2008) (allowing relation-back where the plaintiff's first complaint was well within statute of limitations and she "aggressively sought the identities of the defendants" prior to the expiration of the limitations period). "Having failed to offer any evidence of diligence prior to filing the Complaint, on this basis alone, Plaintiff does not meet the requirements of [§] 1024, and the [Second] Amended Complaint should be dismissed as time-barred." *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *13 (S.D.N.Y. Feb. 25, 2010), *adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010).

Construing Plaintiff's submissions liberally, Plaintiff also argues that because WCHCC is a government entity and was named in the original Complaint, Westchester was on notice of the claim as an entity "united in interest" with WCHCC. (*See* Pl.'s Mem. 4 (suggesting that WCDOC and WCHCC must have been "acting in concert" because WCDOC facilitated Plaintiff's hospital visit).) Under New York law, "[i]n an action which is commenced by filing, a claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest with such defendant when the action is commenced." N.Y. C.P.L.R. § 203(c). Here, however, it is not clear that WCHCC and Westchester are in fact "united in interest"; as a public benefit corporation, WCHCC is "not a [municipal] agency, but rather is a separate, suable entity." *Quinones v. City of New York*, No. 16-CV-985, 2017 WL 1322205, at *11 n.14 (S.D.N.Y. Jan. 6, 2017) (citation omitted), *adopted by* 2017 WL 775851 (S.D.N.Y. Feb. 28, 2017); *see also* N.Y. Pub. Auth. Law § 3305(1) (noting that WCHCC shall have the power "to sue and be sued"); *cf. Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D.N.Y. 2009) (finding amendment relates back to newly-named state entities because "constructive notice may be imputed to a new defendant state entity through its attorney 'when the attorney also represented the officials originally sued, so long as there is some showing that the attorneys knew that the

14

additional defendants would be added to the existing suit'"); *see also Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (collecting cases). "[T]he question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009) (citation and quotation marks omitted).

Here, the Westchester Defendants are not represented by the same counsel as WCHCC, and separately moved to dismiss. Additionally, the claims "would not necessarily stand or fall together," *Lin v. Joedy*, 214 F. Supp. 3d 207, 218 (W.D.N.Y. 2016) (citation and quotation marks omitted), as the Court could find Westchester and Viau liable for Viau's conduct without finding any liability on the part of WCHCC, and vice versa. *See Girau v. Europower, Inc.*, 317 F.R.D. 414, 424 (S.D.N.Y. 2016) ("The 'united in interest' requirement, that the parties be closely linked so "they stand or fall together, and judgment against one will similarly affect the other, is New York's corollary to constructive notice under Rule 15(c) . . . ." (citation omitted)). The Court cannot find any case in which defendants who were represented by separate counsel and raised different defenses were found to be "united in interest" under § 203(c). *See Ramos v. Police Officer Maureen Engels*, No. 15-CV-1081, 2016 WL 3619534, at *7 (E.D.N.Y. June 3, 2016) ("[The] [p]laintiff's argument that the officers are united in interest simply because they 'obviously share the same defenses' is insufficient to meet the requirements of [§] 203. There must be a legal relationship *between* the defendants."), *adopted by* 2016 WL 3640684 (E.D.N.Y. June 29, 2016); *Feliciano v. County of Suffolk*, No. 04-CV-5321, 2013 WL 1310399, at *8 (E.D.N.Y. Mar. 28, 2013) ("Constructive notice is derived from the presumed knowledge of the attorney who represents the original defendant(s) and who would represent the prospective

defendant(s) if leave to amend were granted." (citations and quotation marks omitted)); *Velez v. Fogarty*, No. 06-CV-13186, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008) ("The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period." (citation omitted)).

Furthermore, "New York courts have held . . . that a plaintiff may not add a new defendant under [§ 203] unless 'the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well,'" thus tracking the federal relation-back standard. *Vasconcellos*, 2014 WL 4961441, at *8; *see also Moran v. County of Suffolk*, No. 11-CV-3704, 2015 WL 1321685, at *7 (E.D.N.Y. Mar. 24, 2015) ("The third prong of § 203(c) 'employs the same standard as the federal rule.'" (citation omitted)). As already discussed, Plaintiff "does not satisfy Rule 15(c)(1)(C); [he] thus fails to satisfy the state's corollary to that rule, as well." *Vasconcellos*, 2014 WL 4961441, at *8.

For these reasons, Plaintiff's § 1983 claims are time-barred and must be dismissed. However, Plaintiff's Memorandum asserts that Plaintiff fully exhausted his administrative remedies, and details his unsuccessful efforts to have his grievances considered. (*See* Pl.'s Mem. 6.) Plaintiff states that this process took "several weeks." (*Id.*) The Second Circuit holds that for claims that must be administratively exhausted under the Prison Litigation Reform Act ("PLRA"), "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011); *see also Marshall v. Annucci*, No. 16-CV-8622, 2018 WL 1449522, at *4 (S.D.N.Y. Mar. 22, 2018) ("In the context of prisoner rights litigation, the Second Circuit has recognized that the

applicable statute of limitations must 'be tolled while a prisoner completes the mandatory exhaustion process.'" (quoting *Gonzalez*, 651 F.3d at 234)). Because the Court cannot determine from the face of the Complaint whether tolling pursuant to the grievance process brings Plaintiff's claims within the statute of limitations, Plaintiff's claims are dismissed without prejudice, and he may file an amended complaint that includes sufficient detail to allow the Court to determine when his claims were fully grieved, and thus whether his § 1983 claims were untimely.[3]

### 2. State Law Claims

Defendants contend that if the Second Amended Complaint can be construed as raising any state law claims, those claims should be dismissed because Plaintiff has not complied with the notice-of-claim requirements under New York law. (*See* Defs.' Mem. 14–15.) However, the Court does not need to reach merits of these claims because it declines to exercise supplemental jurisdiction over any state law claims.

---

[3] Because Plaintiff's § 1983 claims are time-barred, the Court need not consider Defendants' remaining arguments. However, the Court notes that Plaintiff has failed to sufficiently plead municipal liability under *Monell*. Plaintiff argues that Viau's actions constitute a decision made by an official with final decision making authority because he gave the order that Plaintiff could not undergo surgery, either "because he in fact had authority to do so or gave the order without consulting the proper officials with 'final decision making authority.'" (Pl.'s Mem. 8.) Plaintiff misapplies the *Monell* standard, which requires that the official have final decision making authority with respect to municipal policy, not merely with respect to the decision made in Plaintiff's individual case. *See Stajic v. City of New York*, No. 16-CV-1258, 2018 WL 4636829, at *13 (S.D.N.Y. Sept. 27, 2018) ("[M]unicipal liability may be imposed for a single decision by *municipal policymakers*." (emphasis added) (citation and quotation marks omitted)). Additionally, Plaintiff's conclusory assertion that Viau's actions "surely" constitute "a failure by policymakers to properly train or supervise their subordinates," (Pl.'s Mem. 8), cannot establish liability under *Monell*. *See Tieman v. City of Newburgh*, 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) ("[M]ere allegations of . . . inadequate training and/or supervision are insufficient to demonstrate the existence of . . . a custom unless supported by factual details.").

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (citation and quotation marks omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.'" *Id.* at 391–92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Because the Court dismisses all federal claims against the Westchester Defendants, the Court declines to exercise supplemental jurisdiction over any possible state law claims against those Defendants at this time.[4]

---

[4] The Court notes that any potential state law claims would require Plaintiff to have filed a timely notice of claim. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations. . . ."); *Dilworth v. Goldberg*, No. 10-CV-2224, 2011 WL 4526555, at *2 (S.D.N.Y. Sept. 30, 2011) (same). "In federal court, state notice of claim statutes apply to state law claims." *Dilworth*, 2011 WL 4526555, at *2. "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim;

## III. Conclusion

For the reasons stated above, the Westchester Defendants' Motion To Dismiss is granted without prejudice. If Plaintiff wishes to file a third amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within the third amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the third amended complaint will replace, not supplement, all prior complaints. The third amended complaint must contain all of the claims against all Defendants, including those who have not joined in this Motion To Dismiss. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his claims against WCHCC may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 43), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED: May 3, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

(2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy*, 164 F.3d at 793 (citations omitted). Should Plaintiff choose to include state law claims in an amended complaint, he must plead fulfillment of this requirement as a threshold matter for the Court to consider his claims.

19